IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARTHUR DIAMOND,

    Plaintiff,

vs.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, et al.,

    Defendants.

        No. CIV S-09-1110 MCE DAD PS

        ORDER AND AMENDED

        FINDINGS AND RECOMMENDATIONS

/

This case originally came before the undersigned on June 19, 2009, for hearing of defendant State Farm's May 7, 2009 motion to dismiss the second cause of action of plaintiff's complaint, alleging professional negligence, pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure (Doc. No. 14) and plaintiff's May 15, 2009 motion to remand this action to the Sacramento County Superior Court (Doc. No. 18). Plaintiff Arthur Diamond, proceeding pro se, appeared at that time on his own behalf. Robert S. McLay appeared as counsel for moving defendant State Farm. Timothy Lord appeared as counsel for defendant Mediterranean Shipping. After hearing the parties' arguments, the motions were taken under submission.

On March 31, 2010, the undersigned issued findings and recommendations recommending that plaintiff's motion to remand this action to state court be granted on the

grounds that plaintiff's claims did not relate to the "tackle to tackle" period and defendant Mediterranean Shipping had failed to establish the applicability of COGSA preemption. In the event, however that the recommendation to remand this action were not adopted by the assigned district judge, the undersigned also recommended that defendant State Farm's motion to dismiss plaintiff's professional negligence claim be granted. (Doc. No. 58)

On April 14, 2010, counsel for defendant Mediterranean Shipping filed objections to the pending findings and recommendations.[1] Therein, new counsel for Mediterranean argued for the first time that while COGSA on its face is limited in its application to the tackle to tackle period, here the parties had through the Paramount Clause of the bill of lading contractually extended its application to all times before loading and after discharge so long as the goods were in the custody and control the carrier. The undersigned concluded that, if new counsel's claim was correct, it appeared that the March 31, 2010 findings and recommendations recommending remand should be vacated and new findings and recommendations should be issued. Accordingly, plaintiff was directed by the court to file a response to the objections. On May 20, 2010, plaintiff filed his response.

On June 28, 2010, the undersigned heard oral argument on the objections. Plaintiff Arthur Diamond, proceeding pro se, appeared on his own behalf. Cherie Sutherland appeared telephonically as counsel for moving defendant State Farm. Devera Petak appeared telephonically as counsel for defendant CSE Insurance Group. Mark de Langis appeared telephonically as counsel for defendant Mediterranean Shipping. Upon hearing argument, and good cause appearing, the court will vacate the findings and recommendations filed March 31, 2010. For the reasons set forth below, in these amended findings and recommendations the undersigned recommends that plaintiff's motion for remand be denied and that defendant State Farm's motion to dismiss plaintiff's professional negligence claim be granted.

---

[1] New counsel had substituted in on behalf of defendant Mediterranean just prior to the issuance of the findings and recommendations.

BACKGROUND

In his complaint, plaintiff alleges as follows. In September of 2006 he owned a 1999 Mercedes Benz which he insured with defendant State Farm. (Decl. of Timothy R. Lord re Notice of Removal (Doc. No. 2), Ex. A (hereinafter "Compl.") at 3.) Under that insurance policy, the contents of the vehicle were also covered. (Id.) A man posing as a shipping agent agreed to arrange for transport of plaintiff's vehicle and its contents to Uganda.[2] (Id.) Soon after releasing his vehicle and its contents to the man, plaintiff realized that he had fallen victim to a scam. (Id.) Plaintiff reported the matter as a theft to the Elk Grove Police Department and to defendant State Farm. (Id.) By October of 2006 police had informed plaintiff and defendant State Farm that the stolen vehicle appeared to be in the possession of defendant Mediterranean Shipping in Houston, Texas but that Mediterranean was not cooperating in the investigation nor were they identifying who had delivered the vehicle and its contents for shipment. (Id.) Following additional efforts by plaintiff in October of 2006, defendant Mediterranean eventually confirmed that among the contents of one of its containers bound for Tanzania, not Uganda, was a vehicle fitting the description of plaintiff's Mercedes Benz. (Id. at 4.) However, Mediterranean indicated that it would release the container only to the individual who produced a bill of lading for the container and refused to identify the persons who had arranged for the shipment. (Id.) In the meantime, defendant State Farm continued to collect monthly premium payments from plaintiff while at the same time taking the position that the loss of the vehicle under these circumstances did not constitute a theft and that since the vehicle had now been transported outside of the United States, they were no longer liable under the auto policy for any loss suffered. (Id. at 5.) In addition, defendant State Farm claimed that the policy did not cover items inside the stolen vehicle, at least in part because the initial police report regarding the theft did not list those items. (Id.) Later, representatives of defendant State Farm advised plaintiff that

---

[2] In the briefing filed by plaintiff in connection with these motions, he identities the man who defrauded him in this way as a "Charles Boateng."

his vehicle and its contents had been located at a Mediterranean container yard in Tanzania but refused to take action to recover the vehicle. (Id.) Representatives of defendant Mediterranean refused to cooperate with INTERPOL in recovering plaintiff's vehicle from the yard in Tanzania. (Id. at 6.) As a result, plaintiff lost his vehicle and all of its contents (electronic equipment, home appliances, clothing and other items) with a total value of over $186,000 and suffered the infliction of emotional distress. (Id. at 6-8.)

Based on these allegations plaintiff has asserted the following causes of action: (1) breach of contract against defendant State Farm; (2) professional negligence against defendant State Farm and Mediterranean; (3) causing financial loss by acting in bad faith against defendants State Farm and Mediterranean; and (4) intentional infliction of emotional distress and unjust enrichment against defendants State Farm and Mediterranean. (Id. at 8-23.) Plaintiff seeks an award of damages in excess of $276,000 with interest along with the recovery of costs and attorney fees. (Id. at 23.)

Plaintiff filed his complaint in the Sacramento County Superior Court on January 12, 2009. On April 21, 2009, defendant Mediterranean removed the action to federal court pursuant to 28 U.S.C. §§ 1441(a) and 1446. (Doc. No. 1.)[3] Mediterranean asserted that removal was appropriate because this court had federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. (Id. at 3.) Specifically, defendant Mediterranean contended that plaintiff Diamond had contracted for the transportation by sea of his property to Uganda and had sued Mediterranean as a common carrier for loss and damage to that personal property. (Id. at 2.) According to the notice of removal, the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 30701, preempts all claims under state law for the carriage of goods by sea to or from the ports of the United States in foreign trade and exclusive jurisdiction over plaintiff's claim against Mediterranean lies in federal court. (Id. at 2-3.)

---

[3] Counsel on behalf of defendant State Farm consented to and supported the removal of the action to this court. (Doc. No. 4.)

4

PLAINTIFF'S MOTION FOR REMAND

I. <u>Arguments of the Parties</u>

In moving for remand, plaintiff argues that he never signed a contract or a Bill of Lading with Mediterranean for the shipment of his belongings overseas and is not suing Mediterranean as a "common carrier." (Mot. for Remand at 3-4.) Rather, plaintiff contends that his claim against Mediterranean is based upon professional negligence, causing financial loss and infliction of emotional distress all based on his allegation that Mediterranean shipped his stolen belongings overseas based on a contract entered into by Charles Boateng purportedly on plaintiff's behalf even though Mediterranean had been informed that the goods in question were, in fact, stolen. (<u>Id.</u> at 9-10.) Plaintiff denies that he is seeking relief under COGSA and professes he has brought only claims under California law based on his allegations that Mediterranean failed to take reasonable action to return his stolen property to him after they were contacted by law enforcement and himself. (<u>Id.</u> at 9-10, 19.) Plaintiff concludes that defendant Mediterranean has not met its burden of establishing that the removal was proper since all ambiguities are to be resolved in favor of remand to the state court. (Id. at 25-29.)

Defendant Mediterranean originally opposed the motion to remand, arguing that plaintiff's claim against it is clearly preempted by COGSA. In this regard, Mediterranean contended that plaintiff admits he instructed a shipping agent to arrange for the transportation of his vehicle and its contents overseas to Uganda but claims that he was "conned" by the shipping agent who had the goods diverted to Tanzania. (Opp'n at 3.) Mediterranean points to plaintiff's complaint filed in state court which identifies Mediterranean as a "common carrier" that failed to inspect and verify ownership of the cargo and failed to take reasonable steps to return plaintiff's property to him. (<u>Id.</u>) (citing Compl. at ¶¶ 48, 50-52). Mediterranean also points to the November 5, 2006 bill of lading for the shipment in question which reflects that the container was to be loaded on board in Houston, Texas and discharged at the port of Dar Es Salaam, Tanzania with the consignee and party to notify listed as plaintiff Arthur Diamond. (<u>Id.</u>) (citing

Ruiz Decl. (Doc. No. 21), Exs. 1 and 4).[4] In light of the bill of lading, Mediterranean contends that all of its rights and liabilities in connection with the shipment are governed by COGSA regardless of whether plaintiff or his purported agent was the signatory to the bill of lading. (Id. at 4.) According to Mediterranean, the total preemptive effect of COGSA provides an exception to the well-pleaded complaint rule and plaintiff cannot avoid removal to federal court simply by omitting from his complaint reference to federal law or by claiming to rely solely on state law in advancing his claims. (Id. at 5.)

Finally, in their objections to the now vacated findings and recommendations, Mediterranean argues that their bill of lading in this case contained a "Paramount Clause" specifically extending the application of COGSA beyond the tackle to tackle period to the entire time that MSC had custody and control of plaintiff's goods. (Objections (Doc. No. 60) at 3-6) (citing Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 29 (2004)).

II. Analysis

The federal removal statute permits the removal from state court to federal court of cases that might have been filed in federal court originally. See 28 U.S.C. § 1441(a). The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction. Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031, 1034 (9th Cir. 2008); Prize Frize Inc. v. Matrix Inc., 167 F.3d 1261, 1265 (9th Cir. 1999); Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988); see also California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004). "If there is any doubt as to the right of removal in the first instance, federal jurisdiction must be rejected." Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996); Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). If at any time prior to judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. 28 U.S.C. § 1447(c).

---

[4] Defendant Mediterranean asserts that it complied with the terms of the Bill of Lading for shipment of the goods overseas.

In opposing remand, defendant Mediterranean relies to a substantial degree upon the decision in Continental Insurance Co. v. Kawasaki Kisen Kasha, Ltd., 542 F. Supp. 2d 1031 (N.D. Cal. 2008).  That case involved a state court action brought by an insurance company against the defendant shipping company for damage to cargo under a bill of lading for the seaborne carriage of plums from Oakland, CA to Hong Kong.  542 F. Supp. 2d at 1032-33.  The defendant removed the action to federal court asserting that the controversy was governed by COGSA.  Plaintiff then moved to remand the action to state court.  The district court found that there was no binding authority addressing the question of whether COGSA completely preempts state law and recognized that there was a split among those courts to have addressed the issue. Id. at 1034.  The district court persuasively reasoned as follows:

> This order will follow the Eleventh Circuit's decision in Polo Ralph Lauren, L.P. and hold that COGSA provides an exclusive remedy and therefore completely preempts state law.  First, the text of COGSA implies that Congress intended to supersede other laws, thereby providing an exclusive remedy.  Second, COGSA sets forth the kind of comprehensive regulatory scheme that the Supreme Court found to provide an exclusive remedy in Beneficial National Bank v. Anderson, 539 U.S. at 10, 123 S.Ct. 2058.  Third, the Supreme Court's recent opinion in Norfolk Southern Railway Co. v. Kirby makes clear that state law must yield to COGSA where it applies.  543 U.S. 14, 28-29, 125 S. Ct. 385, 160 L. Ed.2d 283 (2004).  In short, COGSA leaves no state remedy in its wake; it provides an exclusive remedy and is therefore completely preemptive.  Here are the details.
>
> Although COGSA is silent on its preemptive scope, the text of the statute implies that Congress intended for COGSA to supersede other laws and provide an exclusive remedy.  Polo Ralph Lauren, L.P., 215 F.3d at 1220.

542 F. Supp. 2d at 1034.

In addition, as now argued by defendant Mediterranean, the bill of lading in this case contained a provision stating:

> For all goods shipped to or from the United States of America, this B/L shall be subject to the U.S. Carriage of Goods by Sea Act, 1936 and the U.S. Bill of Lading Act, 1910 (Pomerene) which shall also apply by contract at all times before loading and after

/////

> discharge as long as the good remain in the custody and control of the carrier.

(Declaration of Darlene Ruiz in Opposition to Motion for Remand (Doc. No. 21), Ex. 4.) Such a provision extends COGSA preemption over this action since it involves defendant Mediterranean's handling of the goods pursuant to a bill of lading. As the Supreme Court has observed:

> COGSA also gives the option of extending its rule by contract. See [46 U.S.C. App.] § 1307 ("Nothing contained in this chapter shall prevent a carrier or a shipper from entering into any agreement, stipulation, condition, reservation, or exemption as to the responsibility and liability of the carrier or the ship for the loss or damage to or in connection with the custody and care and handling of goods prior to the loading on and subsequent to the discharge from the ship on which the goods are carried by sea"). As COGSA permits, Hamburg Süd in its bill of lading chose to extend the default rule to the entire period in which the machinery would be under its responsibility, including the period of the inland transport. Hamburg Süd would not enjoy the efficiencies of the default rule if the liability limitation it chose did not apply equally to all legs of the journey for which it undertook responsibility. And the apparent purpose of COGSA, to facilitate efficient contracting in contracts for carriage by sea, would be defeated.

Kirby, 543 U.S. at 29. See also Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp., ___U.S.___, 130 S. Ct. 2433 (2010) (noting that in Kirby the court recognized that COGSA "allows parties to extend its terms to an inland portion of a journey under a through bill of lading."); Mazda Motors of America, Inc. v. M/V Cougar Ace, 565 F.3d 573, 579 (9th Cir. 2009) (following the decision in Kirby, bills of lading are not to be strictly construed but are to be enforced as drafted including with respect to a carrier's contractual defenses).

Defendant Mediterranean came into possession of the goods in question for shipment by sea. The bill of lading issued in connection with the shipment of the goods extended COGSA preemption to all times before loading and after discharge as long as the good were in the custody and control of the carrier. Despite plaintiff's protestations that his is not a maritime action and he is not seeking relief under COGSA, COGSA was contractually made applicable to

8

all claims made against Mediterranean in connection with the goods so long as they remained in Mediterranean's control. COGSA completely preempts any state law remedy and therefore the case was properly removed to federal court. See Kawasaki Kisen Kasha, Ltd., 542 F. Supp. 2d at 1035-37. Accordingly, plaintiff's motion for remand should be denied.

DEFENDANT STATE FARM'S MOTION TO DISMISS

I. Applicable Legal Standards

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the plaintiff's claims, even if the plaintiff's allegations are true.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In general, pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). The court is permitted to consider material which is properly submitted as part of the complaint, documents not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

/////

On a motion to dismiss, the court may take judicial notice of matters of public record outside the pleadings. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001) (on a motion to dismiss, court may consider matters of public record); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986) (on a motion to dismiss, the court may take judicial notice of matters of public record outside the pleadings). Of course, a court may take judicial notice of its own files and of documents filed in other courts. Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of documents related to a settlement in another case that bore on whether the plaintiff was still able to assert its claims in the pending case); Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar and related claims); Hott v. City of San Jose, 92 F. Supp. 2d 996, 998 (N.D. Cal. 2000) (taking judicial notice of relevant memoranda and orders filed in state court cases).[5]

II. Parties' Arguments

Defendant State Farm argues that the second cause of action in plaintiff's complaint filed in the Sacramento County Superior Court, alleging professional negligence, should be dismissed with prejudice because it fails to state a cause of action. In this regard, State Farm contends that it cannot be held liable for professional negligence (as opposed to breach of contract or bad faith) based on its handling of an insurance claim. (Mot. at 3) (citing Brown v Guarantee Insurance Co., 155 Cal. App. 2d 679 (1957), Palmer v. Financial Indemnity Co., 215 Cal. App. 2d 419 (1963), Adelman v. Associated International Ins. Co., 90 Cal. App. 4th 352 (2001), and Tento International, Inc. v. State Farm, 222 F.3d 660, 664 (9th Cir. 2000)).

In his lengthy opposition to the motion to dismiss, plaintiff argues that defendant State Farm and its agents owed him a duty of care (i.e., a duty to act in accordance with insurance

---

[5] Defendant State Farm requests that this court take judicial notice of various documents filed in the state court action prior to removal to this court. Those requests will be granted.

1  professional standards) under his policy with them and that they breached that duty.  Plaintiff
2  contends that he may pursue separate causes of action against defendant State Farm for bad faith
3  and professional negligence.  (Opp'n at 27-28.)
4  III. Analysis
5          The issue presented by the pending motion to dismiss has been addressed by other
6  district courts in California.  Thus, in Unical Enterprises, Inc. v. The Amercian Insurance Co., et
7  al., No. CV 05-3511 CBM (PJWx), 2005 WL 6133910 (C.D. Cal. Sept. 12, 2005), plaintiff sued
8  its insurance company for negligence along with breach of an insurance contract and other causes
9  of action based on the insurer's handling of the sale of salvaged goods in connection with an
10 insurance claim submitted by plaintiff.  In considering the defendant insurer's motion to dismiss
11 plaintiff's negligence cause of action, the district court concluded as follows:

> Under California law negligence is not among the theories of recovery generally available against *insurers*" Sanchez v. Lindsey Morden Claims Services, Inc., 72 Cal. App.4th 249, 254, 84 Cal. Rptr. 2d 799 (Cal. Ct. App.1999) (emphasis in original); Tento Int'l, Inc., v. State Farm Fire & Cas. Co., 222 F.3d 660, 664 (9th Cir.2000) (noting unlikely viability of claim for negligent handling of insurance claim because Californian courts do not generally recognize a claim of negligence against insurers).  Since the relationship between the insured and the insurer under such circumstances closely approximates that of principal and agent or beneficiary and trustee, most courts have based liability upon bad faith rather than upon negligence.  Brown v. Guarantee Insurance Co., 155 Cal. App.2d 679, 687, 319 P.2d 69 (Cal. Ct. App.1957).
>
> * * *
>
> Plaintiff has not provided any legal support for why it should be allowed to pursue a negligence claim in this case despite the general rule that negligence actions are not permitted against insurers.  Despite the open-ended language of California courts that negligence actions generally do not lie against insurers, there is no case law that provides a guide for when such exceptions are appropriate.  Accordingly, the Court GRANTS American's motion to dismiss Plaintiff's first cause of action for negligence WITH PREJUDICE.

25 2005 WL 6133910, at *2.
26 /////

Likewise, in granting a defendant insurer's motion for summary judgment on an insured's negligence claim that was based upon an alleged failure to properly investigate a claim, another California district court has observed:

> Plaintiffs do not cite a single example where a court has found an insurer's failure to properly investigate capable of supporting a separate negligence cause of action under California law. Instead, Plaintiffs urge the Court to rely on fundamental tort principles to recognize its negligence claim. The Court finds doing so would be an expansion unwarranted by California case law and declines to do so.

Everett Associates, Inc. v. Transcontinental Insurance Co., 159 F. Supp.2d 1196, 1204 (N.D. Cal. 2001).

The analysis of the issue by these district courts is applicable and persuasive here. Under California law the general rule is that an insured may not proceed on a separate negligence claim against an insurer. Plaintiff has cited no example of a court ruling to the contrary, nor has he presented argument that would make an exception to that general rule appropriate here in light of his other claims against defendant State Farm. Accordingly, plaintiff's professional negligence claim against defendant State Farm should be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that the Findings and Recommendations filed March 31, 2010 (Doc. No. 58) are vacated.

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's May 15, 2009 motion for remand (Doc. No. 18) be denied; and

2. Defendant State Farm's motion to dismiss the professional negligence cause of action of plaintiff's complaint (Doc. No. 14) be granted.[6]

---

[6] In light of the minute orders issued on January 25, 2010 and February 1, 2010 resetting the Final Pretrial Conference in this case for March 15, 2012 and resetting the Trial for May 14, 2012, in the event these findings and recommendations are adopted the undersigned will issue an amended scheduling order resetting the dates for close of discovery and the last day for law and motion to be heard.

1   These findings and recommendations will be submitted to the United States
2  District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within
3  fourteen (14) days after being served with these findings and recommendations, any party may
4  file written objections with the court.  A document containing objections should be titled
5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections
6  shall be filed within seven (7) days after the objections are served.  The parties are advised that
7  failure to file objections within the specified time may, under certain circumstances, waive the
8  right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
9  DATED: July 23, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

14  ddad1\orders.prose\diamond1110.arr.remand.dismiss